# UNITED STATES DISTRICT COURT

## Northern District of California

### San Francisco Division

| | |
|---|---|
| In the Matter of the Application of<br><br>ACTION AND PROTECTION FOUNDATION; DANIEL BODNAR,<br><br>For an Order to Conduct Discovery for Use in a Foreign Legal Proceeding pursuant to 28 U.S.C. § 1782. | No. C 14-80076 MISC EMC (LB)<br><br>**ORDER GRANTING PETITIONER'S SECTION 1782 APPLICATION FOR DISCOVERY**<br><br>[Re: ECF No. 1] |

## INTRODUCTION

Action and Protection Foundation, a human rights organization aimed at establishing and protecting a self-governing and independent Hungarian Jewish identity, and its chairman Daniel Bodnar filed an *ex parte* application under 28 U.S.C. § 1782 to obtain discovery to use in civil and criminal litigation in Hungary. *See* ECF No. 1 at 5.[1] The litigation is aimed at hate speech (principally authored in Hungarian) contained on a website called Kuric.info and aimed at (among others) Jews of Hungarian origin. *Id.* It proposes subpoenas directed at Bela Varga, who registered the domain name for Kuruc.info, and Cloudflare, the webhost that is used as a platform for the articles published at Kuruc.info. *Id.* at 5-6; Bodnar Decl., ECF No. 2, ¶ 3.

---

[1] Citations are to the electronic case file ("ECF") with pin cites to the electronically-generated page numbers at the top of the page.

ORDER (C 14-80076 MISC EMC (LB))

The court held a hearing on June 18, 2014 and orders the discovery set forth below.

**STATEMENT**

The applicants filed complaints, and are interested parties, in civil and criminal proceedings in Budapest, Hungary.  ECF No. 1 at 1; Bodnar Decl. ¶ 6.  There are two criminal investigations with respect to Kuruc.info pending in Budapest, Hungary: Case No. 01000/2458-1.2013 and Case No. 01030/257/2014.  Bodo Decl., ECF No. 3 ¶ 1; Bodnar Decl. ¶ 6.  Mr. Bodnar says that the investigations will be stymied without the discovery requested in the subpoenas.  Bodo Decl. ¶ 2; Bodnar Decl. ¶ 6.  Two criminal cases had to be suspended for the inability to identify the offender: (a) Case No. 01050/4335-3/2013 (relating to Holocaust denial on Kuruc.info) and (b) Case No. 01050/4253/2013 (same).  Bodo Decl. ¶ 2; Bodnar Decl. ¶ 7.  Mr. Bodnar's civil complaint for defamation (Case No. 1.B.33.088/2013/2) was unable to proceed due to the inability to identify the offender.  Bodo Decl. ¶ 2; Bodnar Decl. ¶ 7.  If the offender is identified, the case may be reopened.  Bodo Decl. ¶ 2; Bodnar Decl. ¶ 7.  The Hungarian courts have no personal jurisdiction over Varga and Cloudflare.  Application at 7.

Mr. Bodnar and other directors of the Foundation have been held up to public ridicule by Kuruc.info.  Bodnar Decl. ¶ 8.  Mr. Bodnar has been specifically targeted by Kuruc.info through "hateful, defamatory, libelous and slanderous articles and postings," and through them has been subjected to fear, intimidation and ridicule.  *Id.* ¶ 9.  Kuruc.info conceals the identities of the individuals behind Kuruc.info.  *Id.* ¶ 10.

Mr. Bodnar attaches a November 14, 2013 article from the San Francisco Chronicle about Kuruc.info that describes it as (1) regularly disputing the Holocaust, (2) organizing hate campaigns against Hungary's lesbian, gay, bisexual, and transgender and Roma communities, and (3) publishing last year the photographs, home addresses, and phone numbers of demonstrators protesting outside the Budapest home of an accused Hungarian Nazi collaborator named Laszlo Csatary, "who sent thousands of Hungarian Jews to their deaths in World War II."  *Id.*  ¶ 11 & Ex. 1.  The Chronicle identifies Bela Vara as the registered owner of the website and says that the "writers and editors [of the website] are in Budapest.  *Id.* & Ex. 1.  The article also says that in September 2013, Varga acknowledged in the Healdsburg Patch (apparently a local newspaper) that he had

ORDER (C 14-80076 MISC EMC (LB))   2

registered the Kuruc.info domain and opened a bank account for the website as a favor for friends, but he said that he had nothing to do with the website's content. Ex. 1. The Chronicle also said, "Others have questioned Varga's hands-off assertion, pointing to reports that Kuruc.info offered a $340 bounty for every demonstrator outside Csatary's house courtesy of 'our Comrade Bela Varga who lives in America.'" Ex. 1.

Mr. Bodnar attaches an email (in Hungarian) that he describes as follows: "*Kuruc.info* also admitted in a recent email exchange that persons wishing to contribute to and support the website can do so by making contributions to Varga's account at Sonoma Bank, and that the recipient for such contributions is Varga, 1340 Woodside Ct., Healdsburg, CA 95448 USA, bank routing number:XXXXXXXX and account number XXXXXXX." Bodnar Decl. ¶ 13 & Ex. 2 (the email).

Article no. 17/A § (1) of the Hungarian Criminal Code criminalizes "Harassment:"

> [A]ny person who engages in conduct intended to intimidate another person, to disturb the privacy of or to upset, or cause emotional distress to another person, or who is engaged in the pestering of another person on a regular basis, such as frequently making unsolicited calls to another person by way of telecommunications equipment or actually harassing another person is guilty of a misdemeanor punishable by imprisonment for up to one year, community service work, or a fine, if such act does not result in a criminal act of greater gravity.

*Id.* ¶ 8.

The proposed subpoena to Mr. Varga requires him to testify about, and bring to the deposition, the following documents:

> 1. All documents, including electronically stored information, related to the website kuruc.info including but not limited to all contracts with Cloudflare Inc. (including the Cloudflare Inc. Terms of Use), documents evidencing all payments made to Cloudflare Inc. for services rendered by Cloudflare Inc. to kuruc.info (including without limitation, webhosting), documents evidencing all complaints made against kuruc.info, documents identifying the reporters, sources, authors, editors, artists, business managers, political lobbyists, sponsors, and/or owners of kuruc.info.
>
> 2. Copies of all bank statements for the Sonoma Bank Account with the last four digits of 2919.
>
> 3. Copies of all checks written on the Sonoma Bank Account with the last four digits of 2919.
>
> 4. Copies of all checks cashed to the Sonoma Bank Account with the last four digits of 2919.
>
> 5. All documents, including electronically stored information, evidencing all deposits received into the Sonoma Bank Account with the last four digits of 2919.

6. All documents, including electronically stored information, related to funding of kuruc.info, including without limitation documents evidencing from whom money and advertising revenue come, in what amounts, and to whom kuruc.info pays and/or donates money.

7. All documents, including electronically stored information, constituting communication between Bela Varga, on the one hand, and any other person on the other hand, referring to kuruc.info.

Ex. 1 at 14. The proposed subpoena to Cloudflare requires it to testify about, and bring to the deposition, the following documents:

1. All documents (including electronically stored information) in your possession, custody and control related to the website kuruc.info.

2. Copies of contracts with and Terms of Use between Cloudflare Inc. and kuruc.info.

3. Copies of payments for services rendered by Cloudflare Inc. to kuruc.info, including all billing information for kuruc.info.

4. Copies of all complaints made against kuruc.info.

5. All documents (including electronically stored information) evidencing the identities of the authors, editors, artists, business managers, political lobbyists, sponsors, and owners of kuruc.info.

6. All server Jog files relating to kuruc.info.

7. All documents (including electronically stored information) indicating the identity or IP address of any person or persons who have posted information to kuruc.info.

8. All documents (including electronically stored information) in your possession, custody and control related to Bela Varga.

9. Copies of contracts with the Terms of Use between Cloudflare Inc. and Bela Varga.

10. Copies of payments for services rendered by Cloudflare Inc. to kuruc.info, including all billing information for Bela Varga.

*Id.* at 18.

The application says that the information "will be used in both Criminal and Civil Courts in Hungary, as well by the Hungarian Parliament in order to hold the individuals behind *Kuruc.info* accountable for their illegal conduct, Holocaust denial, and incitement to violence against Jews in Hungary." Application at 7.

The undersigned then issued an order setting the matter for a case management hearing on March 28, 2014 to address the issue of whether Petitioners should serve Cloudflare and Mr. Varga. 3/14/14 Order, ECF No. 8. The court suggested that it was appropriate given the nature and scope of the proposed

1  subpoena. *Id.* Thereafter, Petitioners said that they did not object to service and proposed a briefing and
2  hearing schedule, which the court adopted. *See* ECF No. 10. Petitioners served Varga and Cloudflare
3  personally. *See* ECF Nos. 13-15. Mr. Varga then requested a continuance until June. *See* ECF No. 16.
4  The court granted that request. *See* ECF No. 17. The court ultimately set the hearing for June 18, 2014.
5  Petitioners served Cloudflare and Mr. Varga with notice of the hearing by first-class mail. *See* ECF Nos.
6  19, 21. Neither filed an opposition.

7  The court held a hearing on June 18, 2014. Counsel for Petitioners appeared, and Mr. Bodnar
8  appeared by telephone. *See* Minute Order, ECF No. 22. Despite service, Respondents did not appear.
9  Petitioner's counsel informed the court that it was his understanding that Mr. Varga is out of the country
10 and possibly not able to return to the country for immigration reasons.

## ANALYSIS

### I. LEGAL STANDARD

28 U.S.C. § 1782(a) authorizes foreign tribunals, litigants, and other "interested persons" to obtain discovery in the United States for use in foreign proceedings. More specifically,

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). An "interested person" is one who "possesses a reasonable interest in obtaining [judicial] assistance" and includes a complainant who "triggers" an investigation by a state investigative body or a litigant in a foreign action. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). "A person may not be compelled to give his testimony or to produce a document or other thing in violation of any applicable legal privilege." 28 U.S.C. § 1782(a); *see In re Microsoft Corp.*, 428 F. Supp. 2d 188, 196 (S.D.N.Y. 2006) (quashing section 1782 subpoenas seeking work product).

A section 1782 application for discovery does not require that a formal proceeding in the foreign jurisdiction be currently pending or even imminent. *Id.* at 258-59. Instead, all that is necessary is

ORDER (C 14-80076 MISC EMC (LB))    5

that a "dispositive ruling" by the foreign adjudicative body is "within reasonable contemplation." *Id*. at 259 (holding that discovery was proper under § 1782 even though the applicant's complaint against the opposing party was only in the investigative stage). An *ex parte* application is an acceptable method for seeking discovery pursuant to § 1782. *See In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (holding that the subpoenaed parties may raise objections and exercise their due process rights by bringing motions to quash the subpoenas).

A district court has wide discretion to grant or deny discovery under § 1782. *Intel*, 542 U.S. at 260-61, 264-65. In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *See id*. at 264-65. The court also may consider whether the section 1782 request is a "'fishing expedition' or a vehicle for harassment," *In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988), abrogated in other part by *Intel*, 542 U.S. at 259; *see Intel*, 542 U.S. at 266; *Lazaridis*, 760 F. Supp. 2d at 115 n.5; and whether the complaint in the foreign jurisdiction is merely pretextual, *see Intel*, 542 U.S. at 266.

A district court's discretion is to be exercised in view of the twin aims of § 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts. *See Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2004). There is no requirement that the party seeking discovery establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding. *See Intel*, 542 U.S. at 247, 261-63.

When considering an application for discovery pursuant to 28 U.S.C. § 1782, the court considers first whether it has the statutory authority to grant the request and then whether it should exercise its

discretion to do so. *Lazaridis v. Int'l Centre for Missing and Exploited Children, Inc.*, 760 F. Supp. 2d 109, 112 (D.D.C. 2011) (citations omitted).

## II. THE STATUTORY REQUIREMENTS ARE MET

The statutory factors are met for the court to issue an order pursuant to 28 U.S.C. § 1782. Cloudflare and Mr. Varga are both in this district, the discovery sought is "for use" in the foreign civil and criminal proceedings, and Mr. Bodnar is an "interested person" in those proceedings. The court thus considers how the *Intel* factors impact the court's discretionary decision about whether to allow discovery under 28 U.S.C. § 1782.

## III. THE DISCRETIONARY DECISION

The first *Intel* factor is whether Cloudflare and Mr. Varga are "participant[s] in the foreign proceeding." *Intel*, 542 U.S. at 264. If they are, then "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* (citations omitted). By contrast, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* (citation omitted).

Here, the court concludes that Cloudflare and Mr. Varga are not participants. Cloudflare certainly is not. Even if Mr. Varga were a criminal suspect, that would not render him a participant. *See Matter of Application of O2CNI Co., Ltd.*, No. C 13–80125 CRB (LB), 2013 WL 5826730, at *13-15 (N.D. Cal. Oct. 29, 2013) (concluding that a respondent's status as a criminal suspect in a Korean investigation did not render him a "participant" within the meaning of the statute).

But the conclusion that Cloudflare and Mr. Varga are not participants does not end the inquiry under the first *Intel* factor or tip this factor automatically in Petitioners' favor, especially given that there are no defendants in preliminary criminal proceedings, only suspects. *See Lazaridus*, 760 F. Supp. 2d at 114. The *Intel* factors involve overlapping considerations, are considered collectively by the court in exercising its discretion, and are not stand-alone categorical imperatives. In reaching the conclusion that discovery is appropriate on this record, the court considered the following.

First, the inquiry is criminal and civil. As the court discussed in a similar case recently, there are

important procedural protections a criminal suspect has here and presumably in Hungary. *See Matter of Application of O2CNI Co., Ltd.*, 2013 WL 5826730, at *13. Still, the proceedings also are civil, and courts have ordered information regarding names and contact information regarding anonymous internet postings, and that information does not seem inappropriate even if there is a parallel criminal proceeding. *See In Re Guido Gianasso's Application For Issuance of Subpoena to Glassdoor.com Pursuant To 28 U.S.C. § 1872*, No. C 12-80029 MISC SI, 2012 WL 651647, at *2-3 (N.D. Cal. Feb. 28, 2012); *In Re Application For the Appointment of a Commissioner Re Request for Judicial Assistance For the Issuance of Subpoena Pursuant To 28 U.S.C. § 1872*, No. C 11-80136 RS (MEJ), 2011 WL 2747302, at *5-6 (N.D. Cal. July 13, 2011). Similarly, the bank records are relevant to identify the same information.

Second, the record is silent one way or the other about the reciprocity of the foreign government to judicial assistance here. On this record, the factor is neutral. Even opposition is not necessarily determinative. *See In Re Application For the Appointment of a Commissioner*, 2011 WL 2747302 at *5-6 (citation omitted).

Third, nothing suggests an attempt to evade foreign proof gathering restrictions or engage in a fishing expedition designed for use in different proceedings.

Fourth, the one issue is the potential burden. The subpoenas request all electronically-stored information, for example. There are no time restrictions for the bank records tailored to the alleged defamation. It is unclear whether Cloudflare might have other defenses.

That being said, the court tried to employ a procedure to include Mr. Varga and Cloudflare in the process to address any concerns, including burden. Given that they have not participated, despite notice of the opportunity to do so, the court authorizes the subpoenas. At the hearing, Petitioners narrowed the scope of the alleged defamation to a time period beginning approximately four and a half years ago and continuing on an ongoing basis, and so the court narrows the subpoenas to a time period beginning as of January 1, 2010 and continuing to the present. Petitioners also noted that Cloudflare has existed only for about three years, which narrows the time period too.

The court authorizes the subpoenas, limited to the time period stated above, with the caveat that Mr. Varga and Cloudflare are not prohibited from filing a motion to quash or otherwise contesting

the subpoenas on any grounds, including burden.

## IV. THE CABLE PRIVACY ACT

A final issue is the Cable Privacy Act, which prohibits cable operators from disclosing personally identifiable information regarding subscribers without either (1) the prior written or electronic consent of the subscriber or (2) a court order, provided that the cable operator provides the subscriber with notice of the disclosure.  47 U.S.C.§ 551(c).  A cable operator is defined as "any person or group of persons (A) who provides cable service over a cable system and directly or through one or more affiliates owns a significant interest in such a cable system, or (B) who otherwise controls or is responsible for, through any arrangement, the management and operation of such a cable system."  *Id.* § 522(5).

Petitioners suggest in their application that Cloudflare and/or Mr. Varga may be cable providers.  *See* Application, ECF No. 1 at 6 n.3.  At the hearing, they were not able to be more definite about Cloudflare (presumably the entity that might be subject to the Act).

In *In Re Guido Gianasso's Application*, the district court, in applying the Cable Privacy Act to a section 1782 application, observed that the testimony taken, or documents produced, are governed by the Federal Rules of Civil Procedure (unless the section 1782 order prescribes a different process).  2012 WL 651647, at *6.  The court then evaluated the discovery under Rule 26(d)'s early discovery standards.  *Id.*  The court does the same here.  The approach makes sense for a host of reasons, including the standards that courts in this district impose routinely for early discovery into the identity of Doe defendants.

A court may authorize early discovery before the Rule 26(f) conference for the parties' and witnesses' convenience and in the interests of justice.  Fed. R. Civ. P. 26(d).  Courts within the Ninth Circuit generally consider whether a plaintiff has shown "good cause" for the early discovery.  *See*, *e.g.*, *IO Group, Inc. v. Does 1-65*, No. C 10-4377 SC, 2010 WL 4055667, at *2 (N.D. Cal. Oct. 15, 2010); *Texas Guaranteed Student Loan Corp. v. Dhindsa*, No. C 10-0035, 2010 WL 2353520, at * 2 (E.D. Cal. June 9, 2010); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 275-77 (N.D. Cal. 2002);  *Yokohama Tire Crop. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 613-14 (D. Ariz. 2001) (collecting cases and standards).

When the identity of a defendant is not known before a complaint is filed, a plaintiff "should be given an opportunity through discovery to identify the unknown defendant, unless it is clear that discovery would not uncover the identity, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  In evaluating whether a plaintiff establishes good cause to learn the identity John Doe through early discovery, courts examine whether the plaintiff (1) identifies John Doe with sufficient specificity that the court can determine that the defendant is a real person who can be sued in federal court, (2) recounts the steps taken to locate and identify the defendant, (3) demonstrates that the action can withstand a motion to dismiss, and (4) proves that the discovery is likely to lead to identifying information that will permit service of process. *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-80 (N.D. Cal. 1999).

Here, Petitioners have satisfied these elements.  *1,* the blog authors are real persons who may be sued in Hungary.  *2,* this appears to be the only way to identify the potential defendants.  *3,* criminal and civil proceedings were pending in Hungary and could not proceed due to the absence of identifying information. *4*, there is a reasonable likelihood that discovery will lead to information identifying the Does.  Thus, there is good cause to engage in the proposed discovery.  *See In Re Guido Gianasso's Application*, 2012 WL 651647, at *6-7 (engaging in similar analysis).

Again, the court's order here does not preclude Respondents from contesting the subpoena, as discussed above, and the discovery is conditioned on Respondents having 7 calendar days after service of the subpoenas to notify subscribers that their identity is being sought by Petitioners, and each subscriber whose identity is sought having 21 calendar days from the date of such notice to contest the subpoena. *See id.* at *7  (employing this process); *In Re Application For the Appointment of a Commissioner*, 2011 WL 2747302 at *3 (same).

## CONCLUSION

For the foregoing reasons, the court grants the application. Petitioners may serve the subpoenas as narrowed and with the following conditions:

1. Petitioners may only use the information for the sole purpose of the Hungarian proceedings and may not release any identifying information without a court order authorizing release of the information.

2. Within 7 calendar days after service of the subpoenas, Respondents shall notify subscribers that their identities are sought by Petitioners and serve a copy of this order on each subscriber. Each subscriber whose identity is sought may, within 21 days from the date of the notice, file any motions in this court contesting the subpoena (including a motion to quash or modify the subpoena). The return date for the subpoena must be set after the expiration of the 21-day period. If the subscriber contests the subpoena, Respondents must preserve (but not disclose) the information sought by the subpoena pending resolution of the case.

3. If Respondents wish to move to quash the subpoena, they must notify Petitioners that they want to do so before the return date of the subpoena. Then, in lieu of a formal motion to quash, the parties must engage in the meet-and-confer and joint-letter-brief process described in the undersigned's standing order. Petitioners must serve a copy of the standing order when it serves the subpoenas.

This disposes of ECF No. 1.

**IT IS SO ORDERED.**

Dated: June 19, 2014

_____
LAUREL BEELER
United States Magistrate Judge